IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>v.<br><br>PAUL ALVIN SLOUGH,<br>NICHOLAS ABRAM SLATTEN,<br>EVAN SHAWN LIBERTY,<br>DUSTIN LAURENT HEARD, and<br>DONALD WAYNE BALL,<br><br>             Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br><br>Case No. 2:08-mj-350-PMW<br><br><br><br><br>Magistrate Judge Paul M. Warner |

Before the court are Paul Alvin Slough, Nicholas Abram Slatten, Evan Shawn Liberty, Dustin Laurent Heard, and Donald Wayne Ball's (collectively, "Defendants") (1) motion for a probable cause hearing pursuant to the Military Extraterritorial Jurisdiction Act (the "MEJA"),[1] see 18 U.S.C. §§ 3261–3267; and (2) motion for a determination that no probable cause exists based on a lack of jurisdiction and improper venue.[2]

---

[1] See docket no. 2.

[2] See docket no. 15.

## I.  Motion for Probable Cause Hearing

Defendants argue that the court is required to hold a probable cause hearing under certain provisions of the MEJA.  In relevant part, the MEJA provides:

> (a)(1) In the case of any person arrested for or charged with a violation of section 3261(a) who is not delivered to authorities of a foreign country under section 3263, the initial appearance of that person under the Federal Rules of Criminal Procedure--
> > (A) shall be conducted by a Federal magistrate judge; and
> > (B) may be carried out by telephony or such other means that enables voice communication among the participants, including any counsel representing the person.
>
> (2) In conducting the initial appearance, the Federal magistrate judge shall also determine whether there is probable cause to believe that an offense under section 3261(a) was committed and that the person committed it.

18 U.S.C. § 3265(a)(1)–(2).

As a preliminary matter, the court notes an inherent inconsistency in Defendants' arguments with respect to the MEJA.  On one hand, Defendants argue that they are not subject to the MEJA because they were employed pursuant to a contract with the Department of State, not the Department of Defense.  On the other hand, Defendants argue that the initial proceedings provision of the MEJA, *see id.*, must apply in this case.  That notwithstanding, the court will allow Defendants to argue procedural rights under the MEJA without necessarily waiving any claims they may have as to lack of jurisdiction and improper venue under the MEJA.

Turning to the central issue, the court has determined that a probable cause *hearing* is not required in this case pursuant to the MEJA.  As Defendants have admitted, the procedures for the probable cause determination under the MEJA must be found in the Federal Rules of Criminal

2

Procedure.  *See id*. § 3265(a)(1) (referring explicitly to the Federal Rules of Criminal Procedure). Pursuant to rule 5.1, which governs preliminary hearings, "a magistrate judge must conduct a preliminary hearing unless . . . the defendant is indicted." Fed. R. Crim. P.  5.1(a)(2).  In cases in which an indictment is returned, no preliminary hearing is needed because the grand jury has already made the probable cause determination.  *See* Fed. R. Crim. P. 5.1, 6.  In this case, an indictment has been returned against Defendants by a grand jury in the District of Columbia. Accordingly, the grand jury has already made the probable cause determination in this case, and it would be redundant for this court to revisit the issue of probable cause.  Furthermore, this court specifically finds it has no authority to do so after the grand jury has acted.

Assuming for the sake of argument that Defendants are entitled to a probable cause determination under the MEJA, it would be just that:  a probable cause *determination*.  It would not be, as Defendants suggest, a probable cause *hearing*.  Indeed, the MEJA does not require a probable cause hearing.  Instead, it requires only that the magistrate judge "determine" whether probable cause exists.  18 U.S.C. § 3265(a)(2).  As previously noted, based on its return of the indictment, the grand jury in the District of Columbia has already determined that probable cause exists in this case.  To the extent this court is required to make a probable cause determination under the MEJA, it relies upon and adopts the probable cause findings previously made by the grand jury.  In fact, this court concludes that in cases where an indictment has been returned, it is entirely appropriate and correct for a magistrate judge to rely upon and adopt the grand jury's probable cause finding as the probable cause determination required under the MEJA.  The court further finds that approach to be consistent with the intent of Congress when it enacted the

3

MEJA, as well as the correct reading and application of the MEJA. Indeed, a House Report on the MEJA states:

> Subsection (a) also requires that, during the initial appearance, the Federal magistrate judge also determine whether there is probable cause to believe that an offense under section 3261 has been committed and that the defendant committed it. This determination will satisfy the due process requirements to which the defendant is due, as determined by the United States Supreme Court in *Gerstein v. Pugh*[, 420 U.S. 103 (1975)]. The committee notes that in cases where an indictment has been returned or an information filed against the defendant in lieu of an indictment, the existence of probable cause necessarily is determined by that event and, therefore, subsection (a) is satisfied by the judge "determining" that probable cause was previously established.

H.R. Rep. No. 106-778, pt. 1 (2000).

This court also concludes and finds that the procedures for initial proceedings set out in section 3265 were not designed to supersede the Federal Rules of Criminal Procedure, including those governing preliminary hearings and the grand jury. *See* Fed. R. Crim. P. 5.1, 6. Nor were they designed to confer what amount to additional rights already provided by those rules, as Defendants have argued. Like any other federal defendants, Defendants are entitled to one probable cause determination, not two, as argued by Defendants' counsel.

Further, this court concludes that the probable cause determination required under the MEJA was designed for cases where no indictment had been returned and no grand jury had made a probable cause determination. Reading section 3265 as a whole, this court concludes that the procedures of that section were primarily intended to be applied in cases involving defendants who are arrested or charged while still outside of the United States, prior to any grand jury

proceedings.  For example, the statute specifically references the ability to hold an initial appearance by telephone or other means, suggesting that its primary applicability would be to defendants not within the United States.  *See* 18 U.S.C. § 3265(a)(1)(B).  The court's conclusion is consistent with Congressional intent, as indicated by a portion of the House Report previously quoted:

> Subsection (a) of section 3265 governs the initial appearance before a judge of a person arrested for or charged with a violation of section 3261 and not delivered to foreign authorities for prosecution.  The initial appearance should be conducted in accordance with the Federal Rules of Criminal Procedure, except to the extent section 3265 provides otherwise.  Subsection (a) requires a Federal magistrate judge to conduct the initial appearance, as is the current practice in all Federal criminal prosecutions, but allows the judge to conduct the initial appearance by telephone "or such other means that enables voice communication among the participants. . . ."  It is the committee's intent that, in the vast majority of cases, the initial appearance of a person arrested or charged under section 3261 will be conducted by telephone or other appropriate means so that the defendant may remain in the country where he or she was arrested or was found.  The committee points out that, in many instances, the defendant's counsel may not be in the same place as the defendant but nevertheless must be included as a participant in the proceeding.  It is the committee's preference that these proceedings will be conducted by video teleconference or similar means whenever possible, so that all participants can hear and see each other.

H.R. Rep. No. 106-778, pt. 1 (2000).

In summary, this court concludes that it would be redundant to revisit the issue of probable cause.  In addition, this court finds it has no authority to do so after the grand jury has acted.  Moreover, to the extent this court determines that Defendants are entitled to a probable cause determination under the MEJA, this court makes that determination by relying upon and

adopting the probable cause finding previously made by the grand jury. For all of these reasons, Defendants' motion for a probable cause hearing is **DENIED**.

## II. Motion for a Determination that No Probable Cause Exists Based on Lack of Jurisdiction and Improper Venue

Based on the court's conclusion with respect to Defendants' entitlement to a probable cause hearing under the MEJA, the court will not reach Defendants' underlying arguments with respect to jurisdiction and venue. Without commenting on or addressing the merits of those arguments, the court finds that they are not appropriate for an initial appearance and, instead, are best addressed by the District Court in the District of Columbia during the normal course of pretrial motion practice. Accordingly, Defendants' motion for a determination that no probable cause exists based on a lack of jurisdiction and improper venue is moot based on the court's denial of Defendants' motion for a probable cause hearing, and therefore, it is **DENIED WITHOUT PREJUDICE**. Defendants are obviously free to renew that motion before the District Court in the District of Columbia.

**IT IS SO ORDERED**.

DATED this 8th day of December, 2008.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge